Matter of Rizzo v Springut Group Inc. (2024 NY Slip Op 05516)

Matter of Rizzo v Springut Group Inc.

2024 NY Slip Op 05516

Decided on November 7, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 7, 2024

CV-23-0751
[*1]In the Matter of the Claim of Janaraha Rizzo, Appellant,
v
The Springut Group Inc. et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:October 15, 2024

Before:Clark, J.P., Pritzker, Lynch, Fisher and Powers, JJ.

Bronk & Somers PC, Rochester (Mark C. Somers of counsel), for appellant.
Hamberger & Weiss LLP, Rochester (Joseph P. DeCoursey of counsel), for The Springut Group Inc. and another, respondents.

Lynch, J.
Appeal from a decision of the Workers' Compensation Board, filed March 28, 2023, which ruled that decedent's death did not arise out of and in the course of his employment and denied claimant's claim for workers' compensation death benefits.
While sleeping during the early morning hours of May 19, 2018, claimant's husband (hereinafter decedent) — who was employed as a bartender for the Lilac (music) Festival — was observed in distress and then stopped breathing, prompting the administration of CPR, which was unsuccessful. Thereafter, claimant filed this claim for workers' compensation death benefits, and the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) controverted the claim. The carrier reasoned that decedent's death was not causally-related to his employment because no injury occurred during his work shift on the evening of May 18, 2018, and decedent died several hours later while sleeping at his mother's home. Following a hearing, at which claimant and several of decedent's coworkers (including the owner and corporate officer) testified and medical evidence was submitted, a Workers' Compensation Law Judge (hereinafter WCLJ) established the claim, finding that decedent's death "was caused or contributed to by the physical nature of his work on [May 18, 2018] at the Lilac Festival." Upon administrative review, the Workers' Compensation Board reversed the decision of the WCLJ and disallowed the claim. In doing so, the Board credited the testimony of several coworkers who explained that decedent did not engage in strenuous labor during his shift on May 18 and rejected claimant's internal medicine consultant because his opinion that decedent's death was causally-related was predicated upon a misunderstanding of, among other things, the extent of decedent's work activity during his May 18 work shift as well as the timing of the onset of his symptoms. Claimant appeals.
We affirm. As an initial matter, where the record contains insufficient evidence that a decedent was in the course of employment at the time of death, the Workers' Compensation Law § 21 (1) presumption does not apply (see Matter of Bordonaro v Genesee County Sheriff's Off., 148 AD3d 1507, 1507-1508 [3d Dept 2017]; Matter of Bailey v Binghamton Precast & Supply Corp., 103 AD3d 992, 993-994 [3d Dept 2013]). "Regarding the issue of causal relationship, claimant bore the burden of establishing — by competent medical evidence — that a causal connection existed between decedent's death and his employment" (Matter of Bordonaro v Genesee County Sheriff's Off., 148 AD3d at 1508 [internal quotation marks and citations omitted]; see Matter of Turner v New York State Dept. of Corr. & Community Supervision, 187 AD3d 1301, 1302 [3d Dept 2020]). "While the Board can certainly rely upon a medical opinion as to causation even if it is not absolute or certain, it is also free to disregard the medical evidence that it finds unconvincing" (Matter of [*2]Donato v Taconic Corr. Facility, 143 AD3d 1028, 1030 [3d Dept 2016] [citations omitted]).
During the Lilac Festival and week leading up to decedent's death (May 10 through May 18, 2018), decedent also worked an office job from 7:00 a.m. to 2:00 p.m., after which he would work at the Lilac Festival until approximately 11:00 p.m. On Thursday, May 17, 2018, decedent informed claimant that he had pain in his left shoulder and left side of his chest and attributed these symptoms to his work at the festival and a possible pinched nerve. The following morning (May 18), claimant observed decedent rotating his left arm and looking tired, pale and jaundiced around his forehead. Decedent worked at the festival on May 18 and last spoke to claimant around 10:30 p.m., when he advised her that he was still working. Following his shift, decedent went to a local bar with coworkers before deciding to go to his mother's home to sleep because he did not feel well. An EMS/paramedic report stated that they responded to a call of cardiac arrest around 4:20 a.m. on the morning of May 19 to find decedent — who had poor routine medical care, was obese and used tobacco — grunting and shaking, after which he stopped breathing, prompting the unsuccessful administration of CPR. The death certificate and autopsy report indicated the cause of death as hypertensive and arteriosclerotic cardiovascular disease with morbid obesity as a significant contributing condition.
Richard Cantor, the carrier's independent consultant who performed a medical records review, acknowledged that decedent had been exerting himself at work in the days leading up to his death and that his physical symptoms revealed that he was experiencing unstable angina. Cantor, however, found that decedent had significant coronary artery disease which would not be caused by his work activity and that his coronary artery disease was so severe that it was limiting his blood flow to his heart, which produced the symptoms. Cantor concluded that claimant's death was caused by decedent's severe underlying coronary artery disease with unstable symptoms, which often lead to a heart attack. The Board rejected the findings of Raymond Basri, claimant's internal medicine consultant, who concluded that decedent's death was causally-related to his employment because he supposedly lifted a cumulative total of approximately 3,385 pounds during his shift on May 18, 2018. This factual premise relied upon by Basri was undermined by the hearing testimony from several of decedent's coworkers who revealed that decedent principally worked as a bartender and/or bar manager during the festival, which consisted of light-duty work and clean up, and that decedent was not lifting heavy kegs of beer at the festival or performing other strenuous labor. The Board noted that decedent died in his sleep several hours after his shift ended on May 18, and, that the death certificate and autopsy report attributed the death to "hypertensive and arteriosclerotic [*3]cardiovascular disease," contrary to Basri's opinion that an acute myocardial infarction was caused by strenuous physical activity. Basri's opinion also did not account for decedent's onset of symptoms on May 17 while decedent was performing sedentary work at a different job. In our view, the Board properly exercised its discretion when it rejected, as unsupported and speculative, Basri's opinion that the cause of death was an acute coronary event related to his May 18 employment at the festival and, therefore, its finding that claimant had not established a causal connection between decedent's employment and his death was supported by substantial evidence (see Matter of Bordonaro v Genesee County Sheriff's Off., 148 AD3d at 1508-1509; Matter of Donato v Taconic Corr. Facility, 143 AD3d at 1030; Matter of Bailey v Binghamton Precast & Supply Corp., 103 AD3d at 994; compare Matter of Polonski v Town of Islip, 220 AD3d 1031, 1033 [3d Dept 2023], lv denied 41 NY3d 905 [2024]). To the extent that we have not addressed claimant's remaining contentions, they are either academic in light of our decision or have been considered and found to be without merit.
Clark, J.P., Pritzker, Fisher and Powers, JJ., concur.
ORDERED that the decision is affirmed, without costs.